UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA f/u/o JEMS         CIVIL ACTION
FABRICATION, INC.

VERSUS                                        CASE NO. 12-0393

BENETECH, LLC, FIDELITY AND DEPOSIT       SECTION: G (3)
COMPANY OF MARYLAND, and ZURICH
AMERICAN INSURANCE COMPANY

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment[1] filed by Defendants Fidelity and Deposit Company of Maryland and Zurich American Insurance Company (collectively, the "Sureties") against plaintiff, JEMS Fabrication, Inc. ("JEMS"). Therein, the Sureties move for dismissal of JEMS' lawsuit with prejudice for failure to file suit within the one-year time limitation imposed by the Miller Act, pursuant to 40 U.S.C. § 3133(b)(4). Having considered the motion, the memorandum in support, the response, the record, and the applicable law, the Court will deny the Motion for Summary Judgment.[2]

## I.  Background

### A.  Factual Background

The United States Army Corp of Engineers (the "Corps") contracted with Benetech, LLC ("Benetech") for the construction of a series of pumping stations on the West Bank of the Mississippi River (hereinafter, the "Project"). The Sureties issued a Miller Act payment bond to protect subcontractors providing labor and/or materials for the Project from the risk of non-

---

[1] Rec. Doc. 16.

[2] *Id.*

payment by the general contractor, Benetech.[3]   On January 6, 2010, Benetech, through its Director of Construction, James E. Book, entered into a subcontract with JEMS, through its President, John C. Kiser, to provide steel and to fabricate certain steel items for the pumping stations in exchange for $4,350,000.00.[4]   The subcontract included $202,432.00 for drawings, $1,316,584.00 for materials, and $830,984.00 for labor on the project.[5]   On November 23, 2010, through a change order approved by Benetech and JEMS, the total contract amount was increased to $2,379,739.60.[6]   Although the subcontract contemplated a completion date of October 23, 2012, there were significant delays in the project.[7]

In July of 2010, Benetech began performing some of the labor that JEMS had initially been responsible for under the subcontract.[8]   According to JEMS, Benetech asked JEMS to permit Benetech to provide some of the labor for the Project going forward, because Benetech was not in compliance with certain requirements of the Corps as to the amount of labor Benetech provided directly.[9]   Thereafter, Benetech provided the labor in New Orleans for installation-aspects of the Project, while JEMS continued to incur labor costs relating to fabrication of materials under the subcontract.[10]   The parties agree that through November 2010 JEMS performed the bulk of its work under the contract, exclusive of the labor obligations Benetech had assumed.[11]

---

[3] Payment Bond, Rec. Doc. 1-5.

[4] Rec. Doc. 19 at p. 3.

[5] *See* Kiser Decl., Rec. Doc. 19-1 ¶ 8.

[6] Rec. Doc. 19 at p. 3.

[7] *Id.*

[8] Rec. Doc. 16-2 at p. 2; Rec. Doc. 19-1 at p. 10.

[9] Rec. Doc. 19-1 at p. 2.

[10] *Id.* at p. 3.

[11] Rec. Doc. 16-2 at p. 2; Rec. Doc. 19-1 at p. 3.

However, Benetech was not paying its subcontractors.  A meeting was held in November 2010 to discuss Benetech's failure to pay, after which Benetech made some additional payments to JEMS.[12]  Contemporaneously, Benetech asked JEMS to provide shop drawings for the missile barriers—the large, custom-fabricate steel cages that attach to buildings at the pumping stations—that were provided for in the subcontract.

On December 20, 2010, JEMS advised Benetech to begin building the missile barriers, which, according to JEMS, required constant communication between JEMS and Benetech regarding specifications for the missile barriers through March 1, 2011.[13]  In April of 2011, JEMS delivered the missile barriers and large "W" beams to Benetech in three different shipments, but Benetech never paid JEMS for the shipments.[14]  According to JEMS, Benetech still owes $863,463.46 on the subcontract.

## B. Procedural Background

Benetech's alleged failure to pay JEMS under the subcontract precipitated the filing of this lawsuit on February 8, 2012.[15]  Pursuant to the Miller Act, 40 U.S.C. § 3131(b), JEMS is seeking recovery from Benetech and the Sureties for the remaining amounts due on the Project under the subcontract.[16]  From Benetech, JEMS also seeks damages pursuant to Louisiana Civil Code article 1994 for breach of contract and penalties and attorney's fees for violation of La. Rev. Stat. § 9:2784.[17]  The Sureties answered the complaint on March 28, 2012,[18] and Benetech

---

[12] Rec. Doc. 19-1 at p. 4.

[13] *Id.*

[14] *Id.* at p. 5.

[15] Compl., Rec. Doc. 1.

[16] *Id.* ¶ 24.

[17] *Id.* ¶¶ 24, 26.

answered on April 7, 2012.[19]   The Sureties filed the instant motion for summary judgment on

July 30, 2012,[20] and JEMS timely filed a response.[21]


## II.  Parties' Arguments

### A.  *The Motion for Summary Judgment*

The Sureties contend that JEMS's cause of action under the Miller Act is barred by 40

U.S.C § 3133(b)(4), which provides that an action "must be brought within one year of the last

work done by the claimant."[22]   According to the Sureties, the United States Court of Appeals for

the Fifth Circuit "has never adopted the 'original contract' versus 'repair work' paradigm."[23]

Instead, the Sureties state that the "Fifth Circuit has developed a 'substantial completion test,'"

whereby an action is barred if it is filed more than one year after substantial completion of the

work.[24]   Although the Sureties  recognize that the one-year limitation period may be tolled, they

state that "minor acts" or acts that "cannot in good faith be called essential to the project" will

not "stop the running of the time limit set forth by section 3133(b)(4)."[25]

Based on the affidavit of James E. Book, the project manager for Benetech, the Sureties

argue that the project was substantially complete in late 2010, because "[a]lthough the material

provided in February and April of 2011 were provided under the [sub]contract, they could not be

---

[18] Rec. Doc. 9.

[19] Rec. Doc. 10.

[20] Rec. Doc. 16.

[21] Rec. Doc. 19.

[22] Rec. Doc. 16-1 at p. 3.

[23] *Id.* at p. 4.

[24] *Id.*

[25] *Id.* (citations omitted).

essential to the completion of [an] already substantially complete project."[26]   Therefore, the Sureties reason that JEMS's lawsuit, filed on February 8, 2012, is barred by the one-year limitation, because the Project was substantially complete more than one year prior.

Furthermore, the Sureties maintain that the Court should consider the following factors, as set forth by the Fifth Circuit in *Georgia Electric Supply Co. v. United States Fidelity & Guaranty Co.*,[27] in determining whether the limitations period was tolled by the additional materials delivered after November of 2010: "1) the value of the materials; 2) the original contract specifications; 3) the unexpected nature of the work; and 4) the importance of the materials to the operation of the system in which they would be used."[28]   According to the Sureties, because the steel provided in 2011 equaled less than three percent of the total subcontract price, was "delivered months late," and was no longer "essential to completion of the system because of Benetech's self-performance," the one-year limitation did not toll because JEMS's contractual obligations had been substantially fulfilled by Benetech.[29]

Finally, the Sureties argue that labor, for the purposes of tolling the Miller Act limitations period, "does not include remedial or corrective work, even if performed as a contractual duty, if such remedial or corrective work was neither significant nor crucial to the operation or functioning of the project."[30]   In this case, the Sureties reason that "JEMS's deliveries should have been completed in 2010" but were delayed by JEMS.  Therefore, "JEMS's 2011 deliveries

---

[26] *Id.* at p. 5.

[27] 656 F.2d 993, 996 (5th Cir. Unit B Sept. 1981).

[28] Rec. Doc. 16-1 at p. 5 (citing *Ga. Elec. Supply Co. Inc.*, 656 F.2d at 996).

[29] *Id.* at p. 6.

[30] *Id.*

constituted remedial work intended, in an untimely fashion to make good on JEMS's contractual obligations."[31]

**B.  *Opposition to the Motion for Summary Judgment***

JEMS argues that its claims are obviously timely under the express language of 40 U.S.C. § 3133(b)(4), because "JEMS supplied its last shipments of steel to Benetech pursuant to the [subcontract] on April 12, 2011 and April 29, 2011," placing the filing of the action within the one-year limitation period.[32]  According to JEMS, Benetech argues "incorrectly, that limitations began to run on the date the project was allegedly substantially complete."[33]  JEMS explains that the Fifth Circuit has set forth different rules on what will extend the limitations period for labor as opposed to materials,[34] but neither of these rules "involves an analysis of the date the project is substantially complete."[35]  Here, JEMS contends that the limitations period is based on the delivery of materials, and the Fifth Circuit has held that materials supplied "in accordance with the original contract and as a necessary portion" of the project are sufficient to extend the limitations period, but materials "furnished for repairs" are not.[36]  JEMS avers that its performance in April clearly extended the limitations period under the Fifth Circuit standard, because the missile barriers were "necessary to make the pumping stations operable" and they were "clearly a part of the original contract."[37]

---

[31] *Id.* at p. 7.

[32] Rec. Doc. 19 at p. 6.

[33] *Id.* at p. 7 (internal quotations omitted).

[34] *Id.* at p. 8.

[35] *Id.* (internal quotations omitted).

[36] *Id.* at p. 9.

[37] *Id.* at pp. 9, 12.

JEMS contends that the *Georgia Electric* factors are only relevant in situations where the line between materials for repairs or as part of the original contract is hazy, which is not the case here.[38]   However, JEMS explains that application of the factors in this case nonetheless demonstrates that the one-year limitation period did not commence until April of 2011 at the earliest, because: (1) the specifications of the original contract required the missile barriers; (2) they had significant value of nearly twenty-four percent of the total contract price; (3) the deliveries were not unexpected; and (4) the missile barriers were necessary and integral components for safe operation of the pumping stations.[39]

JEMS asserts that the Sureties "conclusory statement[s]" that the missile barriers were remedial because they were delivered later than originally anticipated by the contract or were "intended to make good on JEMS's contractual obligations that Benetech supposedly self-performed" have "no support in the law or facts."[40]   According to JEMS, the Project was delayed due to changes to Project specifications made by Benetech or the Corps, and nothing in the email communication during the development of the missile barriers "remotely suggests that JEMS's performance was untimely."[41]   Likewise, JEMS states that it "performed all work and delivered all steel required by the [subcontract]," and the Sureties' evidence to the contrary are "invoices from a subcontractor on a completely different contract governed by a completely different

---

[38] JEMS notes that the other cases cited by the Sureties, *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164 (5th Cir. 1973), and *T.L. Wallace Construction, Inc. v. Fireman's Fund Insurance Co.*, 790 F. Supp. 680, 684 (S.D. Miss. 1992), involved labor, not materials, and are therefore inapplicable to this case, which is governed by the Fifth Circuit standard applicable to Miller Act claims based on delivery of materials.  *See* Rec. Doc. 19 at p. 12.

[39] Rec. Doc. 19 at p. 9.

[40] *Id.* at pp. 10-11.

[41] *Id.* at p. 10.

contract."[42]   Moreover, JEMS argues that, at a minimum, if the cause of the delay or failure to perform under the subcontract were even relevant, they would be contested issues of material fact defeating summary judgment.[43]

Finally, JEMS contends that even if the law provided that the limitations period on Miller Act claims begins to run on the date that a project is "substantially complete," JEMS claims are still timely.  The missile barriers prevent water-borne and air-borne debris from entering the pumps, and therefore, JEMS contends that the Project could not be substantially complete until the missile barriers were incorporated into the pumping stations.[44]   Moreover, JEMS notes that that the Corps did not deem the Project "substantially complete" until April of 2012.[45]

### III.  Law and Analysis

#### A.  Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46]   When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[47]   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory

---

[42] *Id.* at p. 11.

[43] *Id.* at pp. 10-11.

[44] *Id.* at p. 13.

[45] *Id.*

[46] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[48]  If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[49]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of record, which it believes demonstrate the absence of a genuine issue of material fact.[50]  Because JEMS has the burden to establish that it filed suit within the one-year limitation period under the Miller Act,[51] the dispositive issue in the instant motion is one on which the nonmoving party will bear the burden of proof at trial.  Thus, the Sureties may satisfy their summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[52]  At that time, the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[53]  The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[54]

---

[48] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[49] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[50] *Celotex*, 477 U.S. at 323.

[51] *United States v. Seaboard Sur. Co.*, 201 F. Supp. 630, 634 (N.D. Tex. 1961) ("[T]he court further finds that the plaintiff has not sustained the burden of proof as to filing the suit within the time limit prescribed by the statute.).

[52] *See Celotex*, 477 U.S. at 325.

[53] *See id.* at 324.

[54] *See, e.g., id.* at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**B.  Law Applicable to a Miller Act Claim**

      The Miller Act, which applies to contracts awarded for construction of public buildings or public works of the federal government, allows subcontractors who have not been paid to bring a civil action on the payment bond for the amount unpaid at the time the suit is brought.[55] The Miller Act should always be given a liberal construction in favor of allowing recovery.[56] The limitations period at issue in this case, pursuant to 40 U.S.C. § 3133(b)(4), provides that "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action."

      In cases involving the supply of materials, the Fifth Circuit has distinguished between materials furnished for repairs, which will not toll the limitations period, and materials furnished as part of the original contract, which will toll the one-year limitation period.[57]  Although the Sureties contend that such a distinction has not been drawn by the Fifth Circuit, the Sureties actually cite two Fifth Circuit case drawing this distinction.[58]  First, in *Johnson Service Co. v. Transamerica Insurance Co.*,[59] the Fifth Circuit found the Miller Act decisions to be "strong persuasive authority" in a case where the bond at issue was executed on a form prescribed by the

---

[55] 40 U.S.C. § 3133(b).

[56] *See, e.g.*, *MacEvoy v. Calvin Tomkins Co.*, 332 U.S. 102, 107 (1944); *Gold Bond Bldg. Prods. v. Blake Constr. Co.*, 820 F.2d 139, 142 (5th Cir. 1987); *Trinity Universal Ins. Co. v. Girdner*, 379 F.2d 317, 318 (5th Cir. 1967) (per curiam).

[57] *Georgia Elec. Supply Co.*, 656 F.2d at 996.

[58] The Sureties contend that the Fifth Circuit applies the "substantial completion" test, but they cite no legal support for this contention.  *See* Rec. Doc. 16-1 at p. 4.  In fact, the term "substantial completion" is not even used by the Fifth Circuit authorities on this issue.  The Sureties appear to have located the phrase in an opinion from a Puerto Rico district court case.  *See Luis A. Cabrera, S.E. v. Sun Eng'g Enters.*, 817 F. Supp. 1009, 1013 (D.P.R. 1993).

[59] 485 F.2d 164 (5th Cir. 1973).

Miller Act.[60]  In *Johnson Service Co.*, the Fifth Circuit noted the "general rule that 'repairs' are not sufficient to toll the notice period," but emphasized that "each case must be judged on its own facts.  Thereafter, in *Georgia Electric*,[61] another case relied upon in the Sureties' brief, the Fifth Circuit reiterated the distinction drawn in *Johnson Service Co.*, stating that "[t]he line drawn by this Court . . ., whether the materials were furnished for repairs or as part of the original contract is admittedly hazy."[62]

The Fifth Circuit has offered the following factors to consider in cases where the distinction between materials furnished for repairs or as part of the original contract is "hazy": (1) the value of the materials; (2) the original contract specifications; (3) the unexpected nature of the work; and (4) the importance of the materials to the operation of the system in which they are used.[63]  If these factual inquiries lead to the conclusion that the materials were furnished as part of the original contract, then the one-year limitation period does not begin to run until the delivery of those materials.[64]

## C.  Analysis

The parties do not dispute many of the facts.  Specifically, it is uncontested that JEMS made three separate deliveries of fabricated steel in the form of missile barriers and large "W" beams to provide structural support to Benetech in April of 2011.[65]  However, the parties dispute

---

[60] *Id.* at 173.

[61] 656 F.2d 993.

[62] *Id.* at 996.

[63] *Id.*

[64] *See id.* (citing *Johnson Serv. Co.*, 485 F.2d at 174).

[65] Rec. Doc. 19 at p. 2.

the legal significance of these shipments.  The Sureties contend, without citing to any support in the record, that the materials delivered in April of 2011 were not essential to completion of the Project and were remedial work because Benetech "self-performed much of the procurement of steel" and JEMS's deliveries were untimely due to "delays on JEMS's part."[66]

As the non-moving party that will bear the burden of proof at trial, JEMS must articulate specific facts in the record that raise a genuine issue of material fact for trial in order to defeat summary judgment.  The Court finds that JEMS has met its burden to defeat summary judgment by articulating the evidence in the record supporting each of the factors set forth in *Georgia Electric*, which distinguishes between materials furnished as part of the original contract and those furnished for repairs.  JEMS explains that the deliveries in April of 2011 had a value of more than $560,000.00, in a subcontract with a total value of approximately $2,000,000.00. JEMS also cites specific evidence indicating that the original subcontract between JEMS and Benetech required the manufacture of the missile barriers, and JEMS began manufacturing the missile barriers as soon as Benetech requested them and provided the necessary specifications. Moreover, JEMS asserts that the missile barriers were necessary components of a functional pumping station because they prevent water-borne and air-borne debris from entering and damaging the pumps.[67]  Although JEMS maintains that the cause of delay in delivery of the missile barriers and Benetech's self-performance of the subcontract are not relevant to ascertaining the timeliness its action, JEMS has, nonetheless, pointed to specific evidence in the record establishing that any delay was not caused by JEMS and Benetech only assumed performance of the on-site labor under the subcontract at Benetech's request to meet certain

---

[66] Rec. Doc. 16-1 at p. 7.

[67] Rec. Doc. 19 at p. 4.

Corps' requirements.  At the very least, JEMS has established a genuine issue of material fact in dispute regarding these issues.

Therefore, the Court finds that motion for summary judgment must be denied, because JEMS has carried its burden to demonstrate the existence of genuine issues of material fact that the missile barriers delivered in April of 2011 were not repairs, but furnished under the subcontract.

### IV.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment[68] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 15th day of February, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[68] Rec. Doc. 16.